George **NAUGLE**, Plaintiff–Appellant,

v.

**ALLSTATE INSURANCE COMPANY,** Defendant–Appellee.

No. 01–6276.

United States Court of Appeals, Sixth Circuit.

July 30, 2003.

Before MERRITT and
BATCHELDER, Circuit Judges, and
DUPLANTIER, District Judge.*

DUPLANTIER, District Judge.

George Naugle appeals the district
court's dismissal of his claim for damages
under the Kentucky Unfair Claims Settle-
ment Practices Act (KUCSPA), Ky.Rev.
Stat. § 302.12–302.230. For the following
reasons, we **AFFIRM** the district court's
judgment.

* The Hon. Adrian G. Duplantier, United States
District Judge for the Eastern District of Loui-

Although Naugle contends that Allstate
Insurance Company (Allstate) violated
KUCSPA in a number of respects, the
gravamen of his complaint is that Allstate
failed to promptly settle his bodily injury
claim arising out of an automobile accident
caused by the negligence of Allstate's in-
sured. We apply Kentucky law in this
diversity case. *Erie R. Co. v. Tompkins*,
304 U.S. 64, 58 S.Ct. 817, 821, 82 L.Ed.
1188 (1938). Indeed, plaintiff's claim is
based solely upon a Kentucky statute as
interpreted by the Kentucky Supreme
Court.

## RELEVANT FACTS

On January 24, 1996, an automobile
driven by Rebecca Everhart struck, from
the rear, a vehicle operated by George
Naugle on Interstate 75 in Kenton County,
Kentucky. At the time of the accident,
Naugle was acting within the course and
scope of his employment with Internation-
al Paper Company. Following the acci-
dent Naugle experienced back problems.
Approximately one month after the acci-
dent, he underwent back surgery to repair
a herniated disc. On March 3, Naugle
advised an adjuster with defendant All-
state, Ms. Everhart's automobile insurer,
that he had sustained a back injury in the
accident and that he had undergone back
surgery. On April 16, Naugle mailed a
letter to Kelly Volpenhein, the Allstate
adjuster handling the claim at that time,
requesting payment of the medical bills
enclosed with the letter. During a tele-
phone conversation with an Allstate ad-
juster, Naugle told the adjuster that "all
[he] wanted to do was get the medical bills
taken care of and move on." Naugle con-
cedes that it was an Allstate adjuster who
informed him that he had a claim for pain
and suffering.

siana, sitting by designation.

On January 14, 1998, nearly two years after the accident, Naugle filed suit against Allstate, seeking damages for the injuries sustained in the accident. On September 17, 1998, his attorney transmitted to Allstate Naugle's first settlement proposal: Naugle would settle his claim for $100,000, the limit of Ms. Everhart's liability coverage. On December 9, 1998, approximately 35 months after the accident, Allstate offered to pay the policy limit of $100,000 in exchange for a release of all claims and an "indemnification and hold harmless agreement" in favor of its insured for all known and unknown subrogation claims.[1] About two months later, plaintiff accepted the offer and executed the release.

In May 1999, Naugle filed suit in a Kentucky state court against Allstate, seeking compensatory and punitive damages for violations of the following subsections of KUCSPA:

It is an unfair settlement practice for any person to commit or perform any of the following acts or omissions:

. . . .

(2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

. . . .

(6) Not attempting in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear; and

. . . .

(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromised settlement.

Ky.Rev.Stat. § 304.12–304.230. Following removal of the suit to federal court and extensive discovery, Allstate filed a motion for summary judgment. The district court granted the motion and entered judgment dismissing the suit. Naugle timely appealed.

STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. Rannals v. Diamond Jo Casino, 265 F.3d 442, 447 (6th Cir.2001), cert. denied, 534 U.S. 1132, 122 S.Ct. 1074, 151 L.Ed.2d 976 (2002). Summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). We view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. Id. A mere scintilla of evidence is insufficient to overcome a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

DISCUSSION

The parties dispute the standard to be applied to a claim under KUCSPA against an insurer by someone other than the insured. Relying upon Farmland Mutual

---

**1.** Allstate was aware that plaintiff had made a claim for worker's compensation benefits and that he had sought payment of his medical bills from his health insurer; there is no suggestion that Allstate's requirement of an indemnity agreement for any subrogation claim was inappropriate.

*Insurance Company v. Johnson,* 36 S.W.3d 368, 376 (Ky.2000), appellant urges that the proper inquiry is whether there is "sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." On the other hand, appellees contend that *Farmland,* which involved a claim by the insured for fire damage under his property insurance policy, is not applicable to this claim by a third party, and that the more rigorous standard announced in *Wittmer v. Jones,* 864 S.W.2d 885 (Ky.1993), applies. In *Wittmer* the Kentucky Supreme Court concluded that to recover under KUCSPA "there must be sufficient evidence of intentional misconduct or reckless disregard of the rights of ... a claimant to warrant submitting the right to award punitive damages to the jury." *Id* at 890. Relying upon *Wittmer,* the Kentucky Supreme Court has held that to prevail on a claim under KUCSPA, a claimant must prove that "the conduct of the insurers was outrageous, because of an evil motive or reckless indifference to [the claimant's] rights ... mere delay in payment does not amount to outrageous conduct absent some affirmative act of harassment or deception." *Motorists Mutual Insurance Company v. Glass,* 996 S.W.2d 437, 452 (Ky. 1997). Both *Wittmer* and *Motorists Mutual* involved claims by third parties.

We need not resolve the dispute as to which line of Kentucky Supreme Court cases applies; summary judgment was proper even under the *Farmland* "unreasonable" standard relied upon by appellant. Allstate did not act unreasonably, notwithstanding that Naugle's claim was not settled for thirty-five months after the accident.

Allstate was not obligated to initiate settlement discussions with Naugle; its duty was to respond reasonably to a demand by plaintiff.

> Although an insurer is under a duty to promptly investigate and pay claims where it has no reasonable grounds to resist in good faith, neither this duty nor any provision of [KUCSPA] requires the insurer to assume responsibility to investigate the amount of the claimant's loss for the claimant.

*Wittmer v. Jones,* 864 S.W.2d at 891–892. Neither appellant nor his lawyer demanded payment for anything other than the medical bills prior to September 1998, when Naugle's counsel wrote to Allstate advising that Naugle would settle for the policy limit of $100,000. The delay prior to that demand is not attributable to Allstate. Within three months thereafter, Allstate agreed to pay its policy limit.

It is significant that Allstate never attempted to settle the claim for an unreasonable amount or, in fact, for any amount less than the full policy limit. Additionally, there is no evidence that Allstate delayed payment of the claim in an attempt to gain some advantage over appellant or that Allstate made any misrepresentation concerning the applicable coverage.

Appellant contends that the "Customer Service Pledge" provided to him by Allstate was deceptive and contained misrepresentations which create a genuine issue of material fact as to whether Allstate's conduct was unreasonable. The "Customer Service Pledge" states in pertinent part that "we consider you our customer" and indicates that Allstate will "keep you informed throughout the claim process ... will conduct a quick, fair investigation of the facts in your case ... [and] will help you determine if you are eligible to receive compensation for any injuries you may have suffered." Naugle asserts that Allstate did not follow through on these promises. We note that Allstate did, in fact, help Naugle determine that he was

eligible to receive compensation for his injuries. When plaintiff indicated that "all [he] wanted to do was get the medical bills taken care of and move on," it was an Allstate adjuster who informed him of the possibility of making a claim for the pain and suffering resulting from his injuries. In any event, the provisions of the "Customer Service Pledge" relied on by appellant did not create legal obligations by Allstate to plaintiff, and no action or inaction by Allstate misled Naugle to his detriment.

## CONCLUSION

The district court did not err in entering judgment dismissing plaintiff's action with prejudice.